Giphy and WGCZ. Mr. Feynman? Good morning, Judge Hardiman, panel. May it please the Court, Samuel Feynman, Colin Feynman, on behalf of Appellant Karen Hepp. With the Court's permission, I'd like to reserve ten minutes for rebuttal. Granted. Your Honor, a brief summary of the case. Karen Hepp is a seasoned television broadcaster with Fox 29 News just down the street on Market Street. She brought this diversity action against defendants Facebook, Imgur, Reddit, and WGCZ, alleging violations of her statutory and common law right of publicity based upon defendants' unsanctioned posting of an unflattering and very illicit photograph of her that appeared on their respective websites. Despite her articulated claims in the complaint, the District Court dismissed her actions for failure to state a claim reasoning that under the doctrine promulgated in the Ninth Circuit case of Perfect Ten from 2007, Section 230E2 of the Communications Decency Act, hereafter referred to as the CDA, which exempts intellectual property claims from the safe harbor of Section 230C of the CDA, does not apply to state-based right of publicity claims. This District Court holding raises a very serious issue of first impression in this Court. Effectively, if upheld, the District Court's decision stands to nullify any and all state-based intellectual property claims brought against Internet companies in this Court. All right. You've got a serious Section 230 argument. We've got a difference of opinion between Perfect Ten and Atlantic Recording. But before we get into that meaty issue, you've got to get over some substantial jurisdictional hurdles. You don't have a hurdle with regard to Facebook because Facebook hasn't challenged jurisdiction. But I don't see how you have personal jurisdiction over WGCZ. Can you tell us how? Well, that's a distinct issue, Your Honor, and I think the remedy in WGCZ is later in the case they identified a different company as the actual operator of the XNXX website. So with the leap to amend to that defendant that actually operates the website, that would remedy the jurisdictional issue over that defendant because they came out and said, much later in the case, oh, we don't operate the website, so you sued the wrong party. The remedy to that is to amend to name the new party. Well, you could have found that in discovery. You had an opportunity to take jurisdictional discovery and you didn't. And we could even lump together WGCZ, Reddit, and Imgur because under the Ford Motor case, you have to show a strong relationship among the defendant, the forum, and the litigation. And I don't see that with respect to those three defendants. What am I missing? I think you're missing, Your Honor, Judge Hardiman, is the express comprehensive interactivity that these websites have in this jurisdiction. The user interfaces are plentiful. They are targeting Pennsylvania, New Jersey, Delaware, Virgin Island residents with interactivity to engage in their website. Yeah, sure, the websites do business with a multitude of Pennsylvanians, certainly. But what is the, quote, this is from the Ford Motor case. You didn't submit a 28-J letter or anything about this. What is the, quote, strong relationship, end quote, among those three defendants, the Eastern District of Pennsylvania forum, and the litigation? Well, respectfully, Judge, Zippo's sliding scale states that as long as there is, that you meet the requisite requirements of... Zippo is all about whether there's purposeful availment in the forum. Right, and there certainly is in this case. But we know there's purposeful availment. That's a necessary but not a sufficient condition. What is the strong relationship among this litigation and these three defendants? Well, the relationship... As I understand, what I heard you say before is these Internet sites do business in Pennsylvania. And I'm suggesting to you, just my opinion, that's not nearly enough under Ford Motor. So tell me why I'm wrong on that, because what is this strong relationship? Well, assuming Arguendo 230E2 stands in this district, my client's intellectual property rights were harmed by the inaction of these websites. And she's a Pennsylvania resident. Her rights have been harmed in this jurisdiction. That's the relation. I don't think, Your Honor, that it has to be targeted, that they have to specifically go out and target her to make that nexus. I don't believe that's what the case law says. So they don't have to do anything with respect to her image? Just the fact that these users posted the image, that's enough to put these three defendants in the suit? Well, of course, Judge, she has a right against the individuals who made the advertisements. Of course, she would. But the whole idea behind the safe harbor and this idea of having immunity, I'll make an impression. I'm not talking about immunity. I'm asking about personal jurisdiction. I've conceded you've got a very serious argument under Section 230. But before we get there, we have to deal with the jurisdictional issues. But in due respect, Judge, the district court made its ruling, made a ruling of first impression about the impact of Section 230 in this jurisdiction. To sidestep that and then determine the case just on jurisdiction and these other ancillary factual issues that the defendants have brought up, that does a disservice to let stand the district court's 230 ruling. That's inconsistent with our abundant case law that says we can affirm for any reason supported by the record. Your Honor, I submit that there were activities that impacted my client through the Internet that were promulgated by these defendants. What were they? What activities did Reddit, Imgur, and WGCZ, quote, promulgate, to use your words? They allow these third parties to violate my client's intellectual property rights that are protected by Pennsylvania law. All right. So your argument is the straw relationship is that they allowed third parties to post your client's image. Well, if 230E2 exists, then defendants are liable for that action, whether it's from a third party or their own action. It's essentially strict liability, which is the way it should be. Okay. Honestly, it might be better adjudicated if we were to rule against you and then remand you to state court for jurisdictional discovery on the question? To refer to state court for jurisdictional discovery? Yeah. I still remember, Judge, this case was removed because of the 230 issue. It was a state court case. Let me ask this. There's no challenge to Facebook's personal jurisdiction, personal jurisdiction over Facebook, right? Correct. And then there's the challenge to the three other defendants' personal jurisdictions. Typically, we've got this bar, this concept of hypothetical jurisdiction that prevents us from reaching more merits-based issues when there is a lack of jurisdiction. But that bar is relaxed when there's jurisdiction over one party. And so is it really necessary to make personal jurisdiction findings over the other three parties to take on the Section 230 other issues because we wouldn't be exercising hypothetical jurisdiction in that instance because we would be addressing those claims in the context of Facebook? I agree with that position wholeheartedly, Judge Fitz. Now, that doesn't mean that we would necessarily then keep those defendants in the case. It just means that we could possibly address those issues with respect to those defendants without violating the prohibition on the hypothetical jurisdiction. In terms of judicial review, that sounds very reasonable. All right. So why don't we get into the 230 argument. It's, as I understand it, statutory interpretation that it doesn't say federal and the statute could have said federal. It's pretty straightforward, right? Exactly. Judge, it's straightforward. It's plain language. It says any. That's the modifier. There's ample case law that suggests when there's no ambiguity. The statute should be interpreted for what they say. In several instances, in other sections of E, of 230E, there's reference to state and federal. Why would the legislature go through the process of making those sections specifically reference state and or federal law? And in this section, they just meant federal. The rationale of Perfect Ten also is antiquated. We're not in 2007 anymore. We're in 2021. Behind me, your honors, are 12 lawyers from some of the biggest firms in the United States. This is not a nascent industry. This is big business. This is social media. It is big business, but one of the things that's very curious about the statute is that they codified the policy and the purposes, right? And they lean very heavily on that. The argument, as I understand it, and we'll hear from them, is that, you know, Congress made a strong statement that it wanted the Internet to be free. And if we accept your position, we are acting contrary to that codified policy. What's your response to that? My response, your honor, is that it is codified policy, but it's social, it's judicial, it's a type of judicial activism that doesn't necessarily have its place today in 2021. It is not an industry that needs to be protected because of growing, it's not a nascent industry. Well, that's not our decision to protect it. What I'm suggesting is the way Congress wrote the statute, putting the policy in there, Congress seemed to be making a strong statement that it wanted to protect the industry, didn't it? It did when it was promulgated, but when the case was decided in 2007, those were legitimate issues. The court can take judicial notice of the fact that there's bicameral opposition to 230 today because the pendulum has swung in favor of these companies that are now abusing the protection of the safe harbor and trying to disenfranchise rights of people like my client who are simply trying to make a living who have ironically monetized their value through social media and she's incentivized for it, but at the same time they won't protect her because they say the burden is too high. But meanwhile, their brethren such as Google, Google has invented a search engine where you can take an image and reverse search and it doesn't cost them anything because they've already developed it. Other third parties can use it and can easily call websites for images such as my client's to make sure that they're not illegally being featured on their website by third parties. This is not a technology that doesn't exist. It already exists, Your Honor. Let me return to the plain text of the statute because Judge Hardiman asked, and you picked up on this, that the phrase is any law and any law seems to suggest it would be, I mean I don't think that includes foreign law necessarily, but it might include federal and state law because those are the other references in the statute. But it also then has this other qualifier pertaining to intellectual property. And intellectual property we usually think of as being the result of something that survived as the result of the intellect or creative powers. And so that's why when you think of like standard core intellectual property cases that involves patents, copyrights, trademarks protected at the federal and the state level, and trade secrets largely protected at the state level. Why is a right to publicity intellectual property? What about that reflects the exercise of the intellect or the creative powers? I think it's a good question, and I appreciate it, Judge Fitts, the answer. And I would give a nod to our brethren amicus at SAG-DAFRA for making the arguments as well. There is a longstanding right of publicity that has become part of the IP landscape. And one of the reasons why is because with the advent of television, film, live television events, that individuals have been able to monetize their visage, the physiognomy itself to identify and make money. Well, the monetization certainly supports you strongly in calling it property. Right. But I'm not sure it supports intellectual property. Why is one's face intellectual property? Why is one's hand? I mean, people make a lot of money, I think. I don't know any people who do this, but I've read about it. You make a lot of money as a hand model, I guess, people that have nice hands. Is that intellectual property, your hand, the shape of your hand? Judge, if your hand is beautiful enough that it's identifiable as a unique hand, that that is Judge Hardiman's hand and it's monetizable. That's intellectual property? It can be a form of intellectual property because… I think it's – isn't it more intangible property? Like, I totally get it if you say, my name, my likeness, intangible property. It's not tangible. I can't grab it. I can't hold it. It moves without physical property. But to call it intellectual property and put it on the same plane as patents? Put on the same plane as copyrights? Put on the same plane as trade secrets? Well, it certainly has – It strikes me that there's a difference in degree here that is really, really big. And unless intellectual property basically encompasses almost any form of intangible property, it's hard to think that the right to publicity would be intellectual. What about it is intellectual? It falls into IP because it's not a tort. It is a property right because the statute and the common law developed with the idea that there has to be commercialization. It's taking advantage of a property right that one has developed over time. I don't – I agree with everything you just said. Everything you just said makes sense to me. And that still leaves it as only an intangible property right, not an intellectual property right. So what – just continue your thought, but the problem is what takes you over the edge into the intellectual space, not just the intangible space? Well, I think your honor, scholars would disagree. I think SAG-AFTRA would disagree. I think members of the MLB, the NFL, the NBA, the National Golf Association, all of these organizations who make billions of dollars every year monetizing their players' images consider that an intellectual property right. My client worked for years to identify her face with certain core values that is monetizable, and that's why it's an IP right, along with patents, copyrights, and trademarks. So the ability to monetize something equals intellectual property. I'm not saying that. I'm saying it's a process, your honor. It took years of hard work for her – to come up and develop her image in a certain way, and that taking publicity from that reflects a stealing, in one sense, of those years of intellectual and creative work, and thus the right to publicity protects something that is in the intellectual field. Have I completed that thought for you? Agreed. And to add to that, Judge Phipps, I would say that if your honor took – if a movie studio took your honor's – made a model of your honor and then featured it in a movie and then didn't ask your permission, didn't offer any compensation, I would sense that your honor would be offended that someone was using your honor's photo for that purpose, to make money for a third party that you didn't authorize. Well, that might be an actionable choice while not being intellectual property. Those are perfectly consistent, right? Well, assuming a different scenario, one's an actor. I'll give another example. Local – I've mentioned this as a hypothetical in the brief. Joel Embiid, a well-known Philadelphia basketball player, is featured in the Philadelphia Inquirer in an advertisement for, say, steak sandwiches that he didn't approve. They're using his image to sell steak sandwiches. Yeah, that's an actionable tort, potentially. If you misappropriate somebody's likeness, that's an actionable tort. That doesn't mean that it's intellectual property. Well, I disagree, your honor. I think – You think all misappropriation of likenesses equals intellectual property? It has been differentiated from tort law for that reason, that it is a property right, because it is monetizable and it's grown over a period of time. Let me – between defamation and the right to publicity. But in the defamation space, we recognize different calibers of exposure that people have. We have public figures, limited public figures, things like this. I mean, it strikes me that there are some people who don't really put a lot of creativity, who don't really put a lot of effort in a commercializable way into their appearance. There's other people that put a lot of effort into it. I agree, Judge Phipps, and I think that's – And the NDA do that. I think that's relative to the damages that one has in one's right of publicity. Someone who is not famous does not have the same right as someone who has taken years and years to develop that image. Yeah, but counsel, no product was offered or service offered along with your client's name or likeness. No product was advertised. How do you have a cause of action at all? Because, Judge Cowan, she's famous, and by her image being on the website, she's promoting them. These are not charities. These are for-profit endeavors. Nothing was offered for sale. Their services are offered for sale. It's promoting their services. I have an analogy in the brief about that, that just by her – the fact that she is being promoted, it spurs more interest in the websites. Someone would see – Isn't Judge Cowan's question going to kind of do you even state a claim under state law? And, I mean, assuming that you can get around Section 230, and you've got two hurdles. You've got to prove it applies to state law and that it is intellectual property. But assuming that you can get around that, that doesn't necessarily mean that your client states a claim because your statutory claim suggests that it doesn't apply to people who are appearing as members of the NDA. The public, as natural persons who aren't named or otherwise identified, and the allegations don't suggest that she was in any of this content. And your common law claim fails for similar reasons, arguably. So what is the pushback on the – let's say you get over the Section 230 hump, but can you get over the elements of your claim hump? I believe so, Your Honor. I don't believe she's not a member of the community. She's already a well-known, famous individual. Anyone who has – who would have seen her would have recognized her, and that's what happened. That's how the claim came about. A co-worker found this on Facebook and said, wait a minute, Taryn, isn't that – aren't you being featured in that ad? Isn't that you? That is how this came about. So the answer is – It could have – it could happen if somebody saw their sister in the ad, too, right? Right. And the difference is degree of damages. It's her right of publicity that's been violated, Your Honor. How about the – would she be entitled – would they be entitled to immunity under 8316E, I think it is, or D? I don't – again, Your Honor, I don't believe so because she would be easily and instantly recognizable. I don't believe that her name has to be featured to know that that's Karen Hepp. She's an instantly recognizable person. In Philadelphia. At least in Philadelphia. And New York. She was prominently in New York for a while as well. She was an NBC affiliate for over 10 years. But the statutory claim defines – has an out clause that says certain things do not constitute commercial or advertising purposes. And one of those is when the natural person appears as a member of the public, which I think she did here, and the natural person is not named, which there's no allegation that she was, or otherwise identified. And there was no otherwise identification of her beyond her image. And so how do you get out of this out clause in 8316, that's in E2? The carrot to that, Your Honor, is subjective. It's a subjective test. As I posed in the brief, would Your Honor need to know LeBron James' name if it's LeBron James who's focused and featured in the advertisement? I would answer no. You wouldn't need that name. And he's not a member of the public. And just because my client happened to be out and about in a local convenience store, that doesn't make her a member of the public. The question is, do they appear as a member of the public? And so was she on official work when she was in the convenience store? No, but by the same token, I would argue that she's not appearing as a member of the public. I don't believe that that's – Can she ever appear as a member of the public? Or is her publicity so great that she can never appear as a member of the public? If she goes to a football game and they pan the audience, she wouldn't be a member of the public there. She would be something distinct. Your Honor, that comes under newsworthiness exception. She's being featured ancillarily in a program, not for a commercial endeavor. But that is defined. But let's go to the other question then, which is, can she ever appear as a member of the public? Of course she can. Where? When? Yeah. Whenever she's in the public. Buying something in a convenience store. The idea is that she's in a convenience store. But I believe that exception is supposed to go to the idea that it doesn't cover someone who is just out and about. But that person, it's being flipped on its head. And you're saying that that individual, just because they're in the public, doesn't have a cause of action. I don't believe that's what we have to look at the statutory intent of what that exception covers. But I don't believe it's for that purpose. All right. You've reserved substantial time for rebuttal. Thank you, Mr. Finan. Thank you. Let's hear from Mr. Primus on behalf of Facebook. Thank you, Your Honor, and may it please the Court. I'm prepared to address the Section 230 argument. My colleague, Mr. McNary, is going to address the state law intellectual property questions along the lines of what Judge Phipps was asking. We can switch it up, or I can just start in with the 230, whatever the Court prefers. Go ahead. Okay. Thank you, Your Honor. So one question in this case is whether Section 230 of the CDA bars the Pennsylvania right of publicity claim. And the starting point, as always, is the text of Section 230. Judge Hardiman, you asked about the word any, and that's just one word in the statute. But settled rules of construction require that statutory language be read in context and that specific words or terms not be read in isolation, or you can sometimes get to the wrong result. Section 230 is an integrated statutory scheme, and the heart of it is Section 230C1, which broadly protects platforms from state law claims for content posted by third parties. And there are enumerated exceptions, and that's why we're here today. But rather than start with E2, I want to start with E3, which is actually directed to state law. E3 preempts any state law claims that are inconsistent with C1's broad grant of immunity. And under C1 and E3, plaintiff's state law claims are clearly barred. The appellant is trying to come within the intellectual property law exception in subsection E2. But as I said, the statute has to be read in context, and read against the backdrop of subsection C1's broad grant of immunity, and then the ban on inconsistent state law claims in E3, the most natural reading of E2 is that it does only apply to federal law and the body of federal intellectual property law with which everyone is well accustomed. It wouldn't make sense for subsection E2 to upset this immunity scheme by allowing these state law publicity claims, which are very analogous to the same tort claims, that are clearly barred. As Justice Scalia often said, Congress doesn't put elephants in mouse holes, and this would be an elephant of allowing analogous torts in through the intellectual property exception. I mean, it's a little bigger than a mouse hole, right? The word any is pretty big. And so, I mean, you want us to replace any with the word federal. And so, I mean, it would be one thing if you said that doesn't apply to foreign law, we should read it consistent with other references of law that are used in the statute, such as state law is also referenced in the statute, federal law is in the statute. But any is hardly, hardly a mouse hole. And so, I mean, under your reading, there would be no state trade secret law that would be in play, no state trademark law that would be in play. And so, that's kind of strong meaning to give to the word any, kind of restrictive. Your Honor, let me address that. It's an excellent question, and there's several parts to it that I want to make sure I touch on. First is that with regard to the word any, the Supreme Court has clearly said in some cases any is very broad and is intended to be read broadly. But there are other Supreme Court cases and cases from this circuit that say any has to be read in context, and it doesn't always mean every. It doesn't always get read as broadly. And the sites I would want to refer the Court to are the 2018 National Association of Manufacturers versus Department of Defense case, 138 Supreme Court 617, and the Supreme Court's decision in U.S. versus Alvarez-Sanchez, which actually dealt with a federal state rule interpreting any. Let me just follow up on that. Let's just say that any doesn't mean every single law ever enacted in the history of the world. That is still a restrictive meaning of the word any. But to say that any doesn't include state law is a very different thing. So isn't it possible to give the word any a meaning that encompasses something other than every law related to intellectual property ever passed in the history of the world, but also give it a meaning that includes state law? Well, that's why if you read E2 and E3 together, you will see that any state law claims that are consistent with federal intellectual property law are preserved. They're already preserved in E3. And what is being suggested now is to bring in a whole other set of torts that are not preserved or that are not consistent with the ban in E3 and get them in through E2. And since we're being textual, there's one other term in the statute that just frequently gets skipped over, and I want to flag it for the court. 230E2 states that nothing in this section shall be construed to limit or expand any law pertaining to intellectual property. And Judge Phipps, you hit on intellectual property, and I think you were right to do so, because that usually does reference a very recognizable body of federal law, not these varying state torts that we're talking about here. But the language that gets passed over is delimit or expand any law. Now, that would be very curious language to use if Congress were talking about state intellectual property law, because Congress can't expand state law. It has no authority under the United States Constitution to do that. And so the use of the word expand is another textual indicator. But it can limit it. We have the supremacy clause in preemption doctrine that allows the federal government to limit state law in a number of ways. It can limit it. So expand may cut your way, but to the extent it does, doesn't limit cut against you? Well, if they were intending to prohibit, they would typically say preemption or preclusion. Limit is just an odd word to use in that context. But we think that expand is the more telling word when read in conjunction with another provision that already saves comparable state intellectual property laws. And it gets us out of this problem of trying to figure out whether these right of publicity claims are torts or intellectual property, given their pedigree. We don't think they're so clearly intellectual property to get picked up. I'm sorry, Ron, it's a little hard with the ‑‑ Yeah, sorry. It's okay. What meaning does the word limit have? Well, we think that if referring to federal intellectual property law, that typically this would be ‑‑ Congress was saying, and we think that the main driver of E2 would be copyright law. That's the type of federal intellectual property infraction that would most likely occur. And if people are publishing other people's creative works on platforms like Facebook, then this law would say you're not allowed to do that or at least Facebook wouldn't be immunized. And this law is not meant to restrict or expand that right. It's just exactly the right that Congress set. And in that regard, Your Honor, you mentioned trade secrets. I just want to point out that this space is one where Congress has legislated. Congress has legislated multiple times refining, fine tuning what is in and what is out under subsection E2. And the trade secrets example is an excellent one. Because in the Defense of Trade Secrets Act in 2018, Congress specifically said that trade secrets are not to be considered intellectual property law under E2. In another instance ‑‑ Why should we conclude that the exclusions outlined in 230E are directed to certain federal statutes and include state laws only when they are coextensive with the federal counterparts? Wouldn't a more expansive interpretation of the exceptions gut the system of immunity that Congress put forth and undermine the very policies of the Internet? Yes, Judge Cowen, we agree with that. The issue here is that we're focusing on this one word, any. We're reading it out of context. And you have to read it in light of all the statutory language. Now, I've been working through expand and limit. I've been looking at the E3 limitation on state law. But as Judge Hardiman pointed out, 230A and 230B are congressionally enacted findings and policies that Congress intended courts to follow. This is not legislative history. It was actually voted on and passed by Congress. And so when you have the textual indicators that I pointed to, when you have the weak pedigree to these publicity claims as an intellectual property law claim, and then when you have the thumb on the scale that Congress put in saying we want a minimum of state regulation, it seems straightforward. And that text does need to be given credence. And that's one thing. But you want us to follow Perfect 10. Excuse me? You want us to follow Perfect 10. Well, Your Honor, I think Perfect 10 got to the right outcome. But there is a textual analysis. What's wrong with it? What's that? What's wrong with it? What's wrong with Perfect 10? Well, I think Perfect 10, if the decision is correct, it goes a little more quickly to the congressional policy and findings than I think is necessary because there is a strong textual basis for what we're arguing within 230C1, E2, and E3. Do you disagree with Perfect 10's reading where they said that no effect on intellectual property law means no effect on federal intellectual property law? I would just phrase it differently. I wouldn't say we're adding a word. I'm saying that the most natural reading of this provision, in light of all the other provisions that surround it, would point to the fact that Congress was really talking about federal intellectual property law and using intellectual property law as a standard. It's really talking about it without doing it the easy way, using the word federal. It's doing it in a very convoluted roundabout way because the statute does mention state law and it distinguishes state. And so this really isn't just about the word any. It's about the yawning absence of the word federal before the phrase intellectual property, isn't it? It is true that the word federal is not there, nor is the word state. When you read E2 and E3 in conjunction with one another, you do have a regime where you have federal intellectual property and consistent state law. That's interesting because E1 talks about federal, E3 talks about state, and sandwiched in between those we have E2 that doesn't mention either. So it kind of strikes me that to the extent that organization or structure gives us any clues, we have one that talks about federal, three that talks about state, and then two might have a structural vote because it says any. And so at least structure counsels that Congress knew what it was doing, when it wanted to specify federal, it specified federal. When it wanted to specify state, it specified state. When it wanted to include both, it didn't specify either. Right. And if Congress had wanted to pick up 50 states' right of publicity law, and Your Honor just pointed out the multiple times that it used state within the statute, it knew how to do that too. So I don't think the choice not to put federal is actually all that helpful to the plaintiff because they also chose not to put state. And if you look at E4 and E5, Congress was very narrow and very specific. They have specific policies that they were protecting, electronic communications privacy act, the sexual trafficking law, and then they said state law that is consistent with those laws. So they were very narrow and specific. And now we're going to take this intellectual property exception and blow that up into 50 states' different competing laws, many of which are already similar to what's barred. Let me just pick up on that. Is the Pennsylvania statutory or common law right, does that constitute right of publicity constitute intellectual property? Your Honor, as I said at the beginning, my colleague, Mr. Neri, is primed to answer that question. But I will say we agree with that. We strongly agree with that position. And I will just say for purposes of the statutory text of 230E2, it is not so clearly intellectual property. It does not have such a strong footing in intellectual property that through this back door, Congress would have intended to allow all these claims. And one case of that why isn't that the Occam's razor way to read the statute? I think you have a compelling notion when you say it couldn't have been Congress' intent to bring in all this other stuff. Well, the answer is the reason Congress didn't bring in all this other stuff is because all this other stuff isn't intellectual property. Intellectual property, we're talking about patents. We're talking about trademarks, copyrights. Correct. We completely agree with that, Your Honor. So we can get to that end point disagreeing with Perfect Ten and agreeing with Atlantic Recording. Well, the thing with Atlantic Recording is that the judge, the court there, didn't do a full contextual statutory analysis in my view. And in addition, I would just note that in the Force v. Facebook case, which was decided by the Second Circuit after Atlantic Recording, the Second Circuit is clear. They rely on and interpret those policy and findings sections in a way that the judge in Atlantic Recording didn't. I'm not even sure Atlantic Recording would come out the same way after Force v. Facebook. But if we accept your interpretation, Mr. Post, it would seem that your reading erases the sound recording copyright claims in Atlantic Recording. Correct? Well, true, but the interesting thing there, and this brings me back to the point about Congress fine-tuning and using E-2 as a way to fine-tune federal exceptions here, is that Congress subsequently enacted a copyright protection for pre-1972 recordings. So that is clearly now federal intellectual property law, and it would be excluded under E-2. So the decision is somewhat antiquated. We shouldn't worry about saving or discarding these older state law rights because it's now been federalized? Correct. And I think it shows strongly when Congress sees an issue and needs to act, it does so and doesn't just let the absence of language fill the void. I'm sorry, Judge Phipps, did you have a question? I mean, do you have examples of state law that would relate to intellectual property? I mean, one way that could prove your case would be states just don't make intellectual property laws. I mean, I think they have trademark protections. But, I mean, I guess one thing you could say, I mean, it's weird if states actually can make intellectual property laws, and then we read this to say, oh, those aren't in play. Well, Your Honor, the Patent Act and the Copyright Act both have preemption provisions, so they pretty much clear out the space. And then there was this gap that Judge Hardiman mentioned about pre-1972 recordings. That's been fixed. State trademark law is really the one place where the E-2, E-3 might allow some state law in to the equation. I'll let Ms. Ranieri address that in more detail, but I did just want to close by saying that on the trade secret front, I just want to make sure it's clear, Congress has acted there, and in defense of Trade Secrets Act said trade secrets are not intellectual property for purposes of E-2. Thank you, Your Honor. Thank you, Mr. Primus. We'll hear from Ms. Ranieri. Good morning, Your Honors, and may it please the Court. My name is Vera Ranieri, and I represent Imager Inc. and Reddit Inc. You've just heard from Mr. Primus about Title 47 and Section 230 and the meaning of intellectual property and the meaning of Section 230 E-2, but I'd like to discuss why this Court doesn't even need to reach the question of what is meant by Section 230 E-2, because the rights that Ms. Heck asserts are not intellectual property rights. For your clients. We have to reach it for Facebook. I believe, Your Honor, that Facebook also agrees with our... Oh, I'm sorry, yeah, you're talking about the state law. Before you get there, can you address the jurisdiction? Why is there personal jurisdiction over your clients? We don't believe there is, Your Honor. Why isn't there? Your Honor, I think the case that is most relevant here is Calder v. Jones and the line of cases in the Third Circuit that emanate from Calder v. Jones, and specifically IMO Industries. There, the Court made clear that in order for there to be personal jurisdiction in an intentional tort, which this is an intentional tort, the plaintiff must point to specific activity indicating that the defendant expressly aimed tortious conduct at the forum. That is lacking here. At most, what the plaintiff has claimed is that the defendants have aimed other conduct, non-tortious conduct, at the forum. The conduct that she alleges is tortious is not conduct that my clients have aimed at the forum. For that reason, there isn't personal jurisdiction over Reddit and Imgur. Tell us about the details of what your clients aimed at the forum and didn't aim at the forum. Certainly, Your Honor. This is as alleged in the complaint, but we don't disagree with, that my clients have users in the forum. It's also alleged that my clients have various subgroups related to the forum. And with respect to Imgur, Ms. Hepp has alleged that Imgur has a store that sells goods into the forum. But none of these connections relate to the specific tortious conduct that she has alleged that my clients are liable for. The tortious conduct that she alleges was a post by third parties on Imgur that was subsequently linked to on Reddit that does not relate to the forum at all. In fact, we pointed out in our brief that she has not alleged that her claims arise out of or relate to any of the forum contacts that she has identified. And at most, what she has alleged is purposeful availment, which for purposes of this appeal, we are not disputing. What we do dispute is that she has alleged that her claims arise out of or relate to the specific tortious conduct that she says my clients are liable for. Well, I mean, she's clearly alleged that she has a good reputation. She has a lot of followers on social media. And what your users did was to paint her in a very bad light, didn't it? That's correct, Your Honor. But my clients are not responsible for the user's actions with respect to the personal jurisdiction analysis. The Supreme Court has made clear the personal jurisdiction has to be founded on the defendant's contact with the forum, not the plaintiff's contact. And we saw that in Calder v. Jones. The case would have been finished if the location of the plaintiff were sufficient. It would not have gone up to the Supreme Court if that were the case. But the Supreme Court did an analysis. It made clear that you have to look at the defendant's contacts with the forum. And IMO Industries also reaffirms that aspect, that it's the defendant's contacts with the forum that matter here. And the contacts that you're referring to, Your Honor, those are a third party posting the image, not my clients. At most, what my clients did... Your clients are profiting, though. That's the problem, right? Ms. Hepp has alleged that my clients are profiting from the user's use of the service. But, Your Honor, what I think is important, in Calder v. Jones, there was a line about there being untargeted negligence, and that is insufficient for jurisdiction. And that would essentially be what my clients did here. They provided a service nationwide, in fact, worldwide. But this specific post that she alleges is tortious has no connection to the forum. And I think it... So you could only be sued in, where, Delaware? Delaware or California or other places where we have our headquarters, yes. Okay. But isn't there some analysis, sooner or later, that looks at the context vis-a-vis the nature of the claim? And so if the claim is one that relates primarily to the online dissemination of an image, then shouldn't the analysis of the context relate a little bit to the nature of that claim? I mean, we have general personal jurisdiction, we have specific personal jurisdiction, the latter of which tends to focus a little bit on context related to the action brought. And so if the context are sufficient that would allow one of the main things that your clients do, which is have users and forums and stuff like this, to do so in the Eastern District of Pennsylvania, then if we really look at the claim and we really look at the service that your client provided, is it that specific? Maybe we should. Haven't you satisfied the... Isn't the personal jurisdiction test satisfying? I don't think so, Your Honor, and here's why. The context that we have generally with the forum aren't alleged to be tortious, and I think it is really important here that we are in the intentional torts context. So in Ford, for example, you could see that Ford had connections with the jurisdiction because it sold the same car, it advertised the same car, and the claim there, importantly, was not an intentional tort. It was a product liability claim. So the claim about Ford and what Ford allegedly did improperly was the same in that jurisdiction versus any other jurisdiction, but here... Can I just... I'm sorry to interrupt you, but a predicate that you've mentioned a couple times to your analysis is that this is an intentional tort. Yes, sir. And then the other side says it's a strict liability tort. In a mental state, there's nothing else like that. And so if we construe it to be a strict liability tort, how does that change the analysis? If I may address first, Your Honor, whether or not this is a strict liability tort, which I don't believe it is, in fact, intentionality does not refer to a mental state. It refers to the fact that a specific act was taken that may have certain results. I don't believe that this is a strict liability similar to the product liability case that you saw in Ford, but what is required here is some volitional conduct. We see that actually in the copyright space as well, that direct liability for copyright, for example, requires a volitional conduct. It is not enough that someone provides a service that someone else uses to infringe a copyright. Do I think if the court were to construe this as a strict liability tort, would that change the analysis? No, Your Honor, because the acts that my client took were not the acts that led to her claim. My client provided a service that was nationwide, and she doesn't allege that the most- Most you facilitated it by providing a forum for the tortfeasors to act. Correct, Your Honor. And we are not the direct tortfeasors. She admits that. At most, what my client did was provide a service nationwide, globally, that was untargeted at this forum when it was used in the specific case with respect to the specific tortious conduct that she alleges allows her to bring a claim. You're the monetizers for the tortfeasors, though, right? Perhaps, you know, she has not brought any sort of- The more traffic it generates, the more ad revenue you can get, et cetera. That's the business model, right? Let's assume for purposes of this argument that that is true. Your Honor, she has not brought any sort of vicarious liability, indirect liability, and I don't believe that those sort of claims would exist in this context. She has a claim here against someone else, not against my client. And she has jurisdiction, potentially, over that someone else. We don't know the context of that person with this forum, but not against my client. Without your conduct, however, this would never have occurred. You gave her the facility to broadcast this. Similarly, for example, if Canon made a printer and it somehow ended up in Pennsylvania that someone then used to print a defamatory poster that they put up online, would Canon, who, let's say, had no other contacts with the jurisdiction, be responsible in Pennsylvania for that claim? I don't think so. Providing the service alone isn't enough. Just to switch back now to the merits of her claim and whether she has stated a claim, this also goes to the point of how she hasn't alleged that my clients have done anything tortious. What she has alleged is that the third party has used my client's services to engage in tortious conduct. Let me give you a hypothetical to challenge that, recognizing this isn't the case as pleaded, but I'm trying to determine where the line is. What if someone at Imgur or Reddit recognized, someone in Philadelphia, say, recognized Ms. Hepp as a well-known TV personality and then said, you know, we should move this to the top of the list because it's going to drive a lot of traffic and we'll be able to generate more ad revenue. So if someone at Imgur or Reddit had taken those steps, different case, right? You'd have a problem there, wouldn't you? In that case, there is an argument that there would be volitional conduct on behalf of my clients that engaged with this post. But that isn't the case here, as your Honor recognizes. Because under my hypothetical, your clients would be engaged in some sort of curating the images and placement and editorial decision-making as opposed to just sort of passive offer of Internet space. Is that the key distinction or is there some other line? Speaking specifically with respect to personal jurisdiction, your Honor? Yes. Okay. That would move the line if there were some indication under Calder versus Jones that my clients had specifically targeted or expressly aimed the tortious conduct at the forum. So even under Calder versus Jones, there needs to be expressly aiming at the forum. All right. So the easy example then for Reddit would be her image is buried somewhere in Reddit's server space and somebody notices it and says, hey, this is a famous – she may not be well-known in L.A., but everybody knows her in Philadelphia, so let's drive this image to the Philadelphia subreddit. That may be a situation, your Honor, where there could potentially be personal jurisdiction. I think we would need to look at the specific facts. Every case, of course, turns on its specific facts. But that would be closer if there could be an argument that there was expressly aiming at tortious conduct by the defendant itself, not some third party. And to distinguish that, for example, your Honor, let's say a third party had used Ms. Heck's image in the Philadelphia subforum. That would not translate to contact by my clients with the jurisdiction with respect to her claim because it was not my clients who were responsible for targeting the jurisdiction. And there is – within, I believe it is, IMO Industries, there's a discussion of a Raymond case which has a similar fact pattern where an allegedly defamatory article was circulated in a different forum and there was a discussion about how that does not mean once it was circulated by a third party in Ohio that the original writers of the allegedly defamatory article were subject to personal jurisdiction in Ohio because it was a third party who had done that circulation. Reasonable foreseeability that it may end up circulating in the forum is not enough. Would you address the statute of limitations issue for us? Yes, Your Honor. If this court agrees with me that the claims that Ms. Heck is bringing are privacy claims, she's time barred under her complaint and this court may not even reach the question of the discovery rule. And that's because right of privacy claims in Pennsylvania are governed by a one-year statute of limitations and her complaint explicitly says that approximately two years ago she discovered her image. But this court doesn't need to even reach that issue of whether or not they are privacy claims with respect to the statute of limitations. And that's because at most her claims are subject to a two-year statute of limitations and the discovery rule does not apply because in this situation what she is asserting is a claim that is governed by the single publication rule, which most courts consider to mean that a discovery rule cannot apply at all. But even if this court were to determine that the discovery rule could apply, the case law suggests, and we have found no cases to the contrary, that in a mass media case such as this one, the discovery rule cannot apply. And she has given no reason why it should not apply here. And I note, Your Honours, that she did discover this material. She alleges that in the complaint. This is not the case where she was unable to discover it. She did find it. If there are no other questions on the statute of limitations, I would like to talk briefly about her claim and why it is a privacy right. I know there were several questions about that before. Pennsylvania recognizes what Ms. Huck's claims are as a privacy right. And under Section 230C1, her claims are barred. In fact, this court has already determined that in a non-presidential decision, I should note that, in Parker v. Google, that an invasion of privacy claim is barred by Section 230. And in Parker v. Google, that case involved an allegation that Google... Is that because a publisher can't invade someone's privacy? The party that invades the privacy is the person we were calling the tortfeasor before? What I would like... Section 230C1 says that my clients are not publishers for purposes of determining liability. A publisher, writ large, without any... A newspaper, for example, is a publisher that may have liability if they published something. But Section 230C1 protects my clients from being considered publishers where the information was provided by another information content provider. Ms. Huck doesn't dispute here, in this case, that the information was provided by a third party, that Section 230C1 applies. Her only argument is that the intellectual property exception applies. But as we've noted in our brief, Pennsylvania recognizes her rights as privacy rights. And these aren't intellectual property. Well, you know, I mean, I'm not sure... I mean, there's a lot going on there. Because there's invasion of privacy, there's false light. It comes in many... These torts come in many flavors, really. And the specific one that she's bringing isn't so much invasion of privacy, such that you went to a place where I was secluded and otherwise unobservable. She's not saying that she was in a private space in the convenience store. And so the flip side that these state law claims have is a publicity right, not a privacy right. And it seems to me that what she's bringing is different than the claim that you referenced. It's one for unwanted publicity. And the question is, does a claim not for invasion of privacy, but for unwanted publicity, which is distinct under state law, does that constitute the fall into the intellectual property exception? Because does that publicity reflect some degree of intellect or creativity in making Ms. Hepp's image or likeness? And if it does, if she does put some degree of intellect or creativity into the curating of her image or likeness, then why is it an intellectual property? Two responses, Your Honor. First, Pennsylvania has never recognized a right of publicity outside the context of the right of privacy. And we've explained that in our brief. And the Karabi case, in fact, rejected a framing of rights of publicity separate and apart from rights of privacy. And that has never been overruled. It's under Pennsylvania law. The rights she asserted are, in fact, rights of privacy. Now, you asked the question of whether, you know, the facts that she has put in creativity, or does that make her rights turn into intellectual property. And no, Your Honor, for I think the reasons that were part of your previous colloquy with Mr. Feynman, is that her name and likeness exist without any creativity, without any intellectual labor. I have a right of publicity. You have a right of publicity. We all have this right that exists without needing to engage in any intellectual labor. I can bring a right of publicity claim if someone misappropriates my name or image, regardless of how much work I have done or put in into making my name or likeness famous. I mean, but isn't some degree of creativity or intellect inherent in every person's likeness? I mean, you know, I mean, everyone usually tends to pick the clothes they wear, the haircut they get, things like that. Other people work much more on kind of their posture and all of these other developments. But at one level, I mean, it strikes me that inherent in every form of presentation of self in everyday life, there's some degree of creativity or intellectual operation. No? I would disagree, Your Honor, because that is not an aspect of the claim that I would need to show for purposes of the common law claim, at least. I don't need to show that I have put work into creating my name or likeness, making it famous, or anything like that. I can present— So what that means is, under the formulation you just had, in order to determine if something constitutes intellectual property, you would look at the elements of the claim and decide if those elements of the claim require creativity or some degree of intellectualism? I don't think this court needs to reach the question today of what, in fact, intellectual property is. But what the court should recognize is that Pennsylvania has never classified this as intellectual property, and that's why we don't need to reach the question. But it doesn't matter. It doesn't matter what Pennsylvania does. We're looking at a definition under a federal statute and the meaning that federal statute gives to this type of conduct. At one level, people could say, is it a trademark intellectual property? I think people would say, no, it's just the name of the company. But they have to pick the font, the color. They have to pick a certain amount of things that they do just to put a trademark out there. And I guess what I'm saying is, how is that different than what a person does to present themselves in the public? Don't they have to make certain decisions? Font-style decisions and color-style decisions in the context of trademark can call that core intellectual property. Why aren't similar presentation decisions that individuals make about themselves also intellectual property? Well, I think, Your Honor, I actually – and apologies. I'd like to reframe your question a little bit because what your question assumes is that intellectual property isn't clear. And we should be looking at, is there some aspect of intellect or creativity? And this goes to the question of why the phrase intellectual property in Section 230E2 is not clear and shouldn't be read to include anything that could be potentially defined as intellectual property by a state because should we be engaging in this analysis of how the right came about? And I don't think that's what Congress intended. I think Congress, in using the phrase intellectual property, was unclear. And this is the reason why the court should construe it. And at most, as Facebook noted in their brief, it should be rights that are coextensive with what the federal government – Let me just ask this hypothetical. Let's just say that Congress, under its Commerce Clause, enacted a statute that says – that was identical, that had Part 1 that was identical to Pennsylvania's statutory right of publicity and Part 2 was identical to the restatement in Section 652C that Pennsylvania seems to use as common law. Now, that would be a federal law under the Commerce Clause now, we'll assume. We'll assume the Commerce Clause would give that sort of stone. Would those causes of action be intellectual property or not? Your Honor, if Congress specifically said that it was intellectual property, yes.  No, Your Honor, because as I've noted, intellectual property does require some aspect of intellectual labor. And the rights that Mishap asserts don't require that. They are inherent to my – But trademarks often don't require that much intellectual labor. Sometimes it's just a name with a font and a color. Sometimes how a person does their hair or the clothes they wear isn't too much more than that. And trademarks are kind of core intellectual property. So if this were a federal statute, why wouldn't it involve no more intellectual decision-making than trademarks? And if it doesn't involve any more intellectual decision in trademarks, shouldn't it be treated the same as trademarks? Your Honor, I would disagree that there is approximately the same amount of work, if you'd like to call it that, that goes into a trademark. In a trademark sense, there needs to be some thought. There needs to be a definition of the actual intellectual property. But here, the definition of, for example, the person's likeness and how they look, that isn't changed. You could change your hairstyle, but your likeness still exists regardless of your hairstyle. You will still have a claim for likeness if you changed your hair tomorrow. And that is the reason why there isn't this intellectual labor in that it exists regardless of what you do. If you change your clothes tomorrow, you still have a likeness and the same one that existed previous to you changing your clothes. The style of clothes that someone wears isn't what defines the right of publicity. It's the person's face, their inherent natural characteristics, their dignitary interests, if I could characterize it in that way. Your Honor, my time is up, so unless there are any other questions? Judge Cowan, any other questions for Ms. Renner? No. Judge Phipps? No, nothing. All right. Thank you. Ms. Renner, thank you. We'll hear from Mr. Zeller. I have one, Your Honor. Mike Zeller on behalf of WGCZ. May I please report? I'm hoping we won't need 15 minutes on personal jurisdiction with respect to your client, but you never know. Yes, Your Honor. I really don't intend to make a presentation in light of the argument made here today as well as the briefing that has been submitted. The district judge found that the website that the plaintiff is relying upon against my client, where she claims this photo was posted, has not been owned or operated by my client, WGCZ, since May of 2014. So it's never operated any website that's actually at issue in this case. Where was that finding made in the record? That is in the court's August 3rd, 2020, order. And specifically, I would point to page 12. Actually, it's pages 11 to 12. And the judge here describes the fact that the plaintiff was relying upon this website, xnxx.com, and this is the claim that her photo was on it on a message board, and therefore WGCZ should be brought into court. And the discussion that is on pages 11 to 12 includes some of the discussion by the district judge, where it says quite clearly that the plaintiff's argument fails because of the absence of any evidence that plaintiff's claims arise out of or relate to WGCZ's alleged internet presence with respect to xnxx.com, which according to the unrebutted cipher declaration, which is evidence we submit, in fact, was never actually rebutted by the plaintiff, was owned and operated by another entity, MKL. WGCZ's operation of other allegedly interactive websites do not support personal jurisdiction in this case because plaintiff's claims do not arise out of and are not related to those alleged websites. All right. So the easiest way to deal with your client's jurisdictional question isn't to lump it with Imgur and Reddit. It's to just focus on the fact that you put evidence in the record that you didn't even own the site or maintain the site during the relevant time period. That's correct, Your Honor, and that's specifically in the cipher declaration. That is the only evidence on the subject that was submitted. All right. Your response, I think, for Mr. Fineman as well, I'd like leave to amend, and I assume since you're not going to get another chance, your response to that is? I'm sorry. It was a little hard to hear all the questions. Sorry. His response, I'm anticipating, is going to be, well, there was evidence in the record, as you say, but we could amend and get the right party in as a defendant, and your response to that is what? Well, it would depend on what the amendment is. Oh, sorry. It would depend on the amendment that's being sought. If they wanted to simply add a party after WGC is out, that's obviously none of our concern. That's just not our case. The amendment that was sought below specifically asked that another claim be allowed against WGCZ, even though the judge, of course, was finding, and there was no evidence to sustain any kind of personal jurisdiction over the claim that she had brought. The successor liability claim that they wanted to add was even far more afield than anything that would be related to any contacts that WGCZ has with Pennsylvania. Was the successor liability claim? That was the one that they proposed. You were the predecessor to the operator. That's right. It didn't make any sense to us, Your Honor, and that was one of the many reasons why we opposed it. But to the court's question, they want to bring in other parties, and they obviously need to stand on their own merits. Our arguments here today do not address that. We are relying specifically on the finding that we did not own or operate this website. The only thing that was submitted at all in response to this by the plaintiff were two WIPO decisions, which the district judge went through and analyzed, and this is on page 10 of his order, and he went through both of those WIPO decisions and noted that one of them actually, again, this decision identifies NKL as the owner and operator of XNXX.com, namely not WGCZ. The only evidence that they put in about WGCZ was prior to May of 2014. So as the judge also pointed out, it didn't refute the clear evidence from the administrative director, Mr. Seifert, of WGCZ, that it did not own or operate that website, the website that she has sued over since May of 2014. Is there any claim here they wanted jurisdictional discovery? Yes, yes, they did, Your Honor, and my response to that is a couplefold. The district judge did find that because there was no prima facie showing of jurisdiction to begin with, there was no basis for jurisdictional discovery. The second point I would make is that no amount of discovery is going to change the fact, and they proffered nothing that would show that my client owned or operated the website at any relevant time period. And then I would also note that there's actually no error of the district court here because discovery was open. Merit's discovery and everything else was open for at least four months, and the plaintiff never propounded any discovery on WGCZ, jurisdictional or otherwise. So I don't think that the jury, and of course all this is determined under an abuse of discretion standard. It just can't possibly be an abuse of discretion to deny discovery under those circumstances. Thank you, Mr. Zeller. Thank you, Your Honor. We will hear the rebuttal of Mr. Fineman, and Mr. Fineman, if you don't mind, I'm going to ask you to go in reverse order, starting with why WGCZ isn't out for the reasons just described by Mr. Zeller. As I mentioned, Judge, I understand the argument. I think it's telling that it was not in the initial response to pleadings that WGCZ didn't say, oh, by the way, we didn't operate that site. That's not what they did. They were silent. Instead, it was when we got to motion practice, they said, oh, by the way, Ms. Hepp, we're not the proper defendant. That's NKL, actually operated the website. And the fact that jurisdictional discovery, quite frankly, if NKL is the operator of the site, would be useless, but would be helpful, would be an opportunity to amend the complaint because of, you know, it's essentially bad faith to stop them. They said nothing to the fact that, oh, by the way, we're the wrong party. To me, logically, that would be the first response to a complaint that's been removed by other co-defendants, that we're not even the right party. But they didn't do that. They waited, essentially waited it out, timed it out to file a motion to say, oh, by the way, we're not the right party. You should be pursuing NKL. Do you have any case law to support that the timing that you just complained of somehow creates jurisdiction over a party that otherwise would not be subject to jurisdiction? No, I'm making the same jurisdictional argument about the same kind of contact the website has with the Third Circuit. The actual site, XNXX, run by, apparently, NKL, not WGCG. All right. But you concede that at the times relevant to Ms. Hepp's complaint, NKL ran the website, according to the record in the district court. Right. All right. So let's move on to Imgur and Reddit. All right. Can you address why there's jurisdiction over them? I'll repeat the same arguments that I made before, Your Honor. All right. I don't need you to do that. I just didn't know if you wanted to respond to some of their arguments as to why there was no jurisdiction. Again. That Ms. Ranieri made. Ms. Ranieri, on behalf of Imgur and Reddit, they are citing case law that deals with intentional tours and the Calder test. And this is outside the realm of the Calder case because this is clearly within Zippo's sliding scale test. But, again, Ms. Ranieri was explicit. They don't, for purposes of argument, contest that they purposely avail themselves of the Pennsylvania market. That's a given. You've already succeeded on that hurdle. But what about the other hurdles she put up? With respect to effects, I don't see how these defendants can hide behind immunity and say that just because they're third parties who are using our site as a conduit, that they have no responsibility whatsoever in whom their third party's conduct impacts. It seems completely illogical that that would be the conclusion. That because they're not the ones who are operating, if they're not editing and overseeing the website, that still they have no responsibility to the fact that my client's image with highly derogatory software gets attached to them. Well, I mean, personal jurisdiction isn't an absolution of responsibility. It just governs jurisdiction in which it would be one thing to say it can never be sued in the United States in any jurisdiction. But I heard your friend on the other side say there are certain spaces that we could be sued. Right, Your Honor. Delaware and a few others is the sense I get. And so isn't personal jurisdiction really about whether Pennsylvania is appropriate, not whether there's some grave injustice that will never be remedied? Personal jurisdiction is about where you can seek redress. Right, Your Honor. It's about due process. It's about due process and fairness. And I think that if you're a global corporation that is making money in a forum where you are offering, as your model, interactivity with residents of that state who can then see and view my client's image outside of context to say, oh, you know, that's interesting. I'll tell a friend. And that in turn drives commerce to those websites. How is that not even satisfying the culture test? Ultimately, the end result is that these companies profit from that interactivity. Their base core enterprise, their model, is to do that service. And that profit is what gives you an attempt to seek recompense for your client. No doubt about that. But the question is where. We're just talking, as Judge Fitch just said, we're asking the question of where. Well, the commercial activity is in all 50 states and every country that has. But the Ford Motor case, what it surely doesn't say is that because Ford does business in all 50 states, it can be sued and all. It's not that simple, right? It talks specifically about Ford's behavior in Montana, Ford's actions in Minnesota and Montana. And here I'm struggling to see what Reddit and Imgur's actions were in Pennsylvania. All I'm seeing is a bunch of inaction. The difference, Your Honor, is that their core activity is the facilitation of this exact communication with these states. That is their model. They're not selling a product per se. They're not selling a widget. They're selling interactivity with residents of the state. But Ford's natural activity is to make and sell cars, right? And it's anticipated that those cars will be driven. But when somebody buys a car in California and drives it to Michigan, they can't sue Ford and get in an accident in Michigan. They can't sue Ford in Florida, right? And the reason, and it's not an answer to say, well, Ford sells all kinds of cars in Florida. As the Supreme Court said, there has to be a strong relationship between the defendant, the form, and the litigation. And the hypothetical I just gave you, there's no relationship between the accident and the plaintiff and the defendant in Florida, even though Ford sells hundreds of thousands or millions of cars in Florida. To that point, Your Honor, I would argue that these defendants have, they would not turn them over in discovery, but they have matrices that would tell us to the dollar the impact of an advertisement. Maybe not an image because that might not be, I'm not sure that they would monetize that, but they would know to the dollar the impact of an advertisement to a location, to a state, to a representative group. They can do that. They would know how to do that. So the difference here is that their activity, it's their model itself that creates the effects in the circuit. It's the model of their website. It's how they make money. Ironically, Your Honor, Twitter and Instagram, two of their brethren, they're sites that my client has been able to monetize her image through membership subscribers. These are Pennsylvanians, New Jerseyans, people around the world. I'm not sure it helps your case to say your client is getting rich by using social media and complaining about when malefactors make her look bad on social media. No, I'm saying it has a serious effect. That sounds a lot like the risks of being up on social media, right? Well, the point is, Your Honor, she can monetize her image on other brethren websites who don't abuse her image, but the idea is that it's through the conduit, the websites themselves, that this industry has evolved. It is all about intellectual property. Why don't you transition to, I took up too much of your time on jurisdiction. What do you want to say in response to the Section 230 arguments or the questions of state toward immunity? Again, I would direct Your Honors to the Ex Lamicus brief filed by SAG-AFTRA. There's a great history of intellectual property development, right of publicity as an IP right. It's not a privacy right. It's not a privacy right. I think there are 30-whatever-thousand members, actors, musicians, live action theater persons, and also professional athletes would take umbrage with the idea that their images on playing cards, trading cards, that's not intellectual property. That would be big news to the companies that pay them millions of dollars to be able to trade on those cards themselves if that weren't intellectual property. I'm looking at the SAG brief now, though, and it seems to highlight, it talks about the membership who rely on right of publicity laws. So they don't seem to be avoiding the concept of right of publicity. No, the idea with the suit, Your Honor, is that the defendants in following Perfect Ten intend to eviscerate the right of publicity in Pennsylvania or call it a right of privacy right, which it isn't. Well, it doesn't eviscerate the right of publicity because you could sue and win all kinds of money from the people that with apparent malevolent intent tried to make your client look bad, right? So you seem to have a slam dunk against those folks. Well, the argument, Your Honor, in reality, who are these people? Where would you find them? How would you know who they are? I would think these websites, they're users on the websites, so you take some discovery and then the websites tell you who they are and then you sue them. But I assume your response is they're not deep pockets, and so you want to go after the deep pockets instead of the malevolent actor who may not be easily recovered against. Why is my client able to sue a newspaper or a billboard manufacturer or an advertiser, but they can't sue Facebook? Well, Congress, I don't think, has anything like Section 230 to protect traditional print media, right? That's sort of why we ended up here, right? There are still inherent publicity rights with the other claims. Judge Cowan, any other questions for Mr. Fineman? No. Judge Fitch? No, none for me. All right. Well, thank you to all counsel for a very lengthy but very important argument. Thank you for the excellent briefs in the case. The court will take the matter under advisement.